**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 17 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

No. 03-2247

ESTEBAN ZAVALZA-RODRIGUEZ,

Defendant - Appellee.

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-03-633 MV)**

---

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, New Mexico, for the Plaintiff-Appellant.

Margaret A. Katze, Assistant Federal Public Defender, Albuquerque, New Mexico, for the Defendant-Appellee.

---

Before **HENRY** , **LUCERO** , Circuit Judges, and **FIGA** ,[*] District Judge.

---

**LUCERO** , Circuit Judge.

---

[*] The Honorable Philip S. Figa, United States District Judge for the District of Colorado, sitting by designation.

The single issue in this sentencing appeal is whether the district court erred in finding that, on the one hand, a U.S.S.G. § 2D1.1 sentence enhancement applied because "a dangerous weapon . . . was possessed," and that, on the other hand, for purposes of a downward departure under U.S.S.G. § 5C1.2(2) the defendant did not "possess a firearm or other dangerous weapon . . . in connection with the offense." Arguing that if a gun is "possessed" for purposes of sentence enhancement, then it necessarily is "possessed" to preclude application of a sentence reduction, the government asserts error in the district court's sentencing. We are not ultimately persuaded by this argument. Particularly influenced by our prior case law, we conclude that a finding that a § 2D1.1 sentence enhancement applies does not necessarily preclude a finding that a § 5C1.2 sentence reduction also applies. Accordingly, we exercise jurisdiction pursuant to 18 U.S.C. § 3742(b) and **AFFIRM**.

I

On December 6, 2002, while executing a warrant to search the house of Jose Esteves, who had recently been murdered, Bernalillo County Sheriff's officers found the defendant, Esteban Zavalza-Rodriguez, occupying a bedroom where he states he spent one night. At the house, the officers discovered narcotics, materials used to package narcotics, five firearms, and a large amount of cash. A loaded .45 caliber semiautomatic pistol was found in the bedroom

2

where Zavalza was lodging. Urging that the gun was not his, Zavalza requested that the gun be fingerprinted, which the officers declined to do. Zavalza admitted to selling heroin for Esteves and claimed to have been living in the United States for about one month. He explained that he had left his home in Las Varas, Nayarit, Mexico and entered the United States illegally in pursuit of a construction job, only to find himself faced with a job selling narcotics for Esteves. Rather than return to his home, he agreed to work for Esteves.

Zavalza entered into a plea agreement pursuant to an information charging him with possessing more than one kilogram of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A). In that agreement he stipulated to a two-level sentencing enhancement for the presence of the handgun in the bedroom where he was staying. The primary issue at sentencing was whether Zavalza was eligible for the "safety valve" sentencing reduction available pursuant to 18 U.S.C. § 3553(f)(1)–(5). Noting the absence of fingerprint evidence linking the gun to the defendant and a lack of evidence regarding how long Zavalza had lived at the residence, the district court found that the defendant met his burden of demonstrating by a preponderance of the evidence that the gun was not connected to the offense. Also finding that he satisfied the other four criteria for application of the safety valve, the district court sentenced Zavalza without regard to the statutory minimum sentence pursuant to § 5C1.2. This

resulted in a sentence of sixty months imprisonment.  The government appeals asserting a single error—that the district court erroneously granted Zavalza relief pursuant to § 5C1.2 considering its application of a § 2D1.1(b)(1) two-level increase for possession of a weapon.

We review for clear error the district court's decision that relief under § 5C1.2 is permissible, giving due deference to the district court's application of the Sentencing Guidelines to the facts.  United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999).  However, we review de novo the district court's interpretation of the scope and meaning of the sentencing guidelines.  United States v. Saffo, 227 F.3d 1260, 1272 (10th Cir. 2000).

II

The morning star is the same celestial body as the evening star.  Yet we refer to this body—actually the planet Venus—by different names in different contexts.  Similarly, in this case the district court referred to possession of a gun for one purpose in a sentence enhancement and for a different purpose for a sentence reduction, all the while referring to the same weapon.

Initially, we must analyze the precise relationship between § 2D1.1(b)'s provision "was possessed" which would mandate a sentence enhancement, and § 5C1.2(2)'s language "possess . . . in connection with the offense" which operates to bar a sentence reduction.  As to the first provision, a defendant is

4

subject to a two-level increase "if a dangerous weapon (including a firearm) was possessed." The Guidelines instruct that this enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt., n.3. We have determined that the government has the initial burden of proving possession of a weapon for purposes of § 2D1.1(b)(1) by preponderance of the evidence. United States v. Pompey, 264 F.3d 1176, 1180 (10th Cir. 2001). This burden is met by establishing "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." Id. (quotation omitted). Once the government satisfies this initial burden, the defendant may overcome it only if he establishes "that it is clearly improbable the weapon was connected with the offense." Pompey, 264 F.3d at 1181 (quotation omitted).

In the present case, Zavalza explicitly stipulated in his plea agreement that a § 2D1.1(b)(1) two level enhancement for possession of a firearm was appropriate. Zavalza argues, however, that he entered into this agreement only because he believed that he would be unable to meet the "clearly improbable" standard required for him to overcome his burden under § 2D1.1(b)(1). Because the handgun was present in the room where he slept and because he knew it was there, Zavalza admits that he constructively possessed it for purposes of § 2D1.1(b)(1), although he maintains that he did not actually possess it (or even

5

touch it).  Despite this admission, the district court found, and Zavalza argues on appeal, that he is nonetheless entitled to relief under the safety valve provision.

Section 5C1.2 provides that a court shall impose a sentence without regard to a statutory minimum, if the defendant meets five criteria.[1]  To establish eligibility for the sentence reduction, the defendant bears the burden of satisfying all five criteria by a preponderance of the evidence.  United States v. Verners, 103 F.3d 108, 110 (10th Cir. 1996).  Before us, it is undisputed that Zavalza met this burden with reference to four of the five criteria.  The sole issue is whether the district court erred in finding that Zavalza satisfied the following criterion that: "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  § 5C1.2(2).  Because Zavalza pled to possession of a weapon for purposes of § 2D1.1(b)(1), the government argues that it necessarily

---

[1]  Section 5C1.2 provides that a court shall apply a sentence for offenses inter alia of 21 U.S.C. § 841 without regard to a statutory minimum if the defendant meets the following criterion:
    (1) "the defendant does not have more than 1 criminal history point . . .";
    (2) "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense";
    (3) "the offense did not result in death or serious bodily injury to any person";
    (4) "the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . ."; and
    (5) "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense . . ."

follows that he is ineligible to be sentenced in accordance with the "safety valve."

In support, the government contends there is an inherent logical inconsistency in finding both that the government met its burden of proving possession for purposes of § 2D1.1(b)(1)—considering that the Guidelines instruct that this section should not be used if it is "clearly improbable that the weapon was connected with the offense"—and also finding that the defendant met his burden of proving non-possession for purposes of § 5C1.2(a)(2). Syllogistically, the premise of the government's argument seems quite intact.

Applicable precedents are not as clear. Like other circuits, we have never required such consistency as a matter of form. We have previously held that a defendant may constructively conspire to "possess" a weapon for purposes of a sentence enhancement, while not actually possessing the same weapon "in connection with the offense" such as to preclude application of the safety valve. We defend this seeming anomaly by explaining that while a § 2D1.1(b)(1) sentence enhancement applies to a defendant for a co-conspirator's possessing a weapon, a defendant is not precluded from receiving a safety valve reduction based on the defendant's individual conduct. United States v. Pena-Sarabia, 297 F.3d 983, 988–89 (10th Cir. 2002); United States v. Clavijo, 165 F.3d 1341, 1343–44 (11th Cir. 1999) (holding that it is error to conclude that "because the co-defendant's firearm was attributed to Clavijo under section 2D1.1(b)(1), it

7

necessarily follows that the same firearm would be attributed to Clavijo under section 5C1.2(2)"); United States v. Wilson, 105 F.3d 219, 222 (5th Cir. 1997) (concluding that the defendant must have actually possessed a weapon to preclude the safety valve, and thus "in determining a defendant's eligibility for the safety valve, § 5C1.2(2) allows for consideration of only the defendant's conduct, not the conduct of his co-conspirators"); In re Sealed Case (Sentencing Guidelines' "Safety Valve"), 105 F.3d 1460, 1462–63 (D.C. Cir. 1997) (holding that the co-defendant's possession of a weapon does not preclude application of the safety valve and noting the difference between the passive voice "was possessed" in § 2D1.1(b)(1)  and the active voice requiring the defendant to do the possessing in § 5C1.2(a)(2)).  Such cases make clear that we focus on the defendant's own conduct for purposes of evaluating eligibility for the safety valve, and that we recognize a distinction between constructive and actual possession.  This recognition allows a court to refer to the same weapon that "was possessed" by the defendant for purposes of § 2D1.1(b)(1) as a weapon that the defendant did not "possess . . . in connection with the offense" for purposes of § 5C1.2(a)(2), without any taint of contradiction in the use of "possess."[2]  Although conspiracy

_____

[2]  The government cites our decision in United States v. Hallum, 103 F.3d 87, 89 (10th Cir. 1996), as controlling authority for its proposition that application of § 2D1.1(b)(1) is inconsistent with application of § 5C1.2(a)(2).  In that case we agreed with the Eighth Circuit that a gun's proximity and potential to
(continued...)

8

was not charged in the information, Zavalza's situation is closely analogous to the facts of these cases.

The statutory language itself lends support to the consistency of the district court's findings; that is, "possessed" is used in two different senses in the two different provisions. Section 2D1.1(b)(1) is written in the passive voice, requiring a sentence enhancement "[i]f a dangerous weapon (including a firearm) was possessed." For purposes of § 2D1.1(b)(1), the government need only show that "the weapon was found in the same location where drugs or drug paraphernalia are stored." United States v. Roederer, 11 F.3d 973, 982–93 (10th Cir. 1993) (quotation omitted). Possession in the context of § 2D1.1(b)(1) is therefore possession by proximity—constructive possession.

By contrast, § 5C1.2(2) is written in the active voice, mandating that

---

[2](...continued)
be used in connection with the offense is sufficient to prevent application of the safety valve. Id.; United States v. Burke, 91 F.3d 1052, 1052 (8th Cir. 1996). In Hallum, however, the defendant did not argue that he constructively possessed a weapon for purposes of § 2D1.1(b)(1). He argued instead that when he was arrested for carrying marijuana in a rural location, the rifle discovered in his truck was not possessed in connection with the offense; rather, it was for shooting snakes. Unlike Zavalza, therefore, Hallum did not argue that the gun was not actually his nor that it was merely constructively possessed. We have distinguished Hallum in the context of constructive possession in a conspiracy context, holding that the broad preclusion in Hallum was contrary to controlling law and to the law of every other circuit addressing the issue. Pena-Sarabia, 297 F.3d at 987-89. We agree that Hallum is distinguishable in the present context based on similar reasoning as Pena-Sarabia.

9

possession be in "connection with the offense."  As the D.C. Circuit has noted, possession in § 5C1.2(2) is an active possession whereby there is a close connection linking the individual defendant, the weapon and the offense.  In re Sealed Case, 105 F.3d at 1463.  As we noted in Roederer, § 2D1.1 was amended in 1991 to require only that the weapon "was possessed," eliminating the more specific language requiring the weapon to be carried "during the commission of the offense."  Roederer, 11 F.3d at 982-3.  The new rendering of § 2D1.1(b)(1) broadens the scope of culpable conduct beyond that covered by the old language, which, importantly, now distinguishes it from the language of § 5C1.2(2) ("possess . . . in connection with the offense").  Thus, the distinctions between the language of § 2D1.1(b)(1), requiring mere proximity to the weapon, and § 5C1.2(2), requiring active possession, make clear that a closer degree of connection is necessary to preclude application of the safety valve than is necessary for a finding of possession under § 2D1.1(b)(1).

Finally, consonant with the difference in language between § 2D1.1 and § 5C1.2(2), there is a difference in evidentiary standards when applying the two provisions.[3]  Specifically, for purposes of § 2D1.1(b)(1), once the government has

_____

[3] In prior unpublished opinions we have noted the issue, but we have not determined whether the substantive standards of the two provisions are the same. See United States v. Talamantes, 2004 U.S. App. LEXIS 11473; United States v. Burgess, 2002 U.S. App. Lexis 1878.

met its initial burden of showing that a weapon "was possessed," the defendant must then show that it is clearly improbable that a weapon was not connected to the offense. Pompey, 264 F.3d at 1181. By contrast, under § 5C1.2(2) the defendant bears the sole burden to establish by a preponderance of the evidence eligibility for the sentence reduction. Verners, 103 F.3d at 110. Instructive on this point is the Ninth Circuit's recent rejection of a per se rule that would foreclose application of the safety valve anytime § 2D1.1(b)(1) applied. United States v. Nelson, 222 F.3d 545, 551 (9th Cir. 2000).[4] It held that the burden of proof for purposes of § 5C1.2 is different from the burden of proof under § 2D1.1(b)(1) and did not restrict the context merely to that of co-conspirator firearm possession. Id. Although the conduct that would support a sentence enhancement under § 2D1.1 may be the same conduct that would prevent application of the safety valve in § 5C1.2, the burdens of proof remain different under the two provisions. Id. A defendant therefore need only demonstrate by a preponderance of the evidence eligibility for the safety valve, whereas the defendant must show that it is clearly improbable that a gun was not used in connection with the offense to avoid the § 2D1.1 sentence enhancement.

---

[4] We note that the government's brief cites as "illustrative" of the law in the Ninth Circuit United States v. Smith, 175 F.3d 1147 (9th Cir. 1999), which was narrowed to its facts and effectively overruled by Nelson's rejection of a per se exclusion of the safety valve when § 2D1.1(b)(1) applies.

This brings us then to the reconciliation of these legal authorities with the seeming logical inconsistency suggested by the government. There may be a seeming inconsistency when, on the one hand, a court applies a sentence enhancement for possessing a weapon for purposes of § 2D1.1(b)(1) and, on the other hand, also finds that a sentence reduction applies for not possessing a weapon for purposes of § 5C1.2(2). We find persuasive the Sixth Circuit's reasoning in rejecting a per se rule that would exclude eligibility for sentence relief under § 5C1.2(2) when § 2D1.1(b)(1) also applies: "It does not deductively follow from a defendant's failure to satisfy a higher quantum of proof on a particular issue that he cannot satisfy a lower quantum of proof on that same issue." United States v. Bolka, 355 F.3d 909, 914 (6th Cir. 2004) (holding that a § 2D1.1(b)(1) enhancement does not preclude application of the safety valve). It simply does not logically follow that the government's ability to show by a preponderance of the evidence that a weapon "was possessed" proximate to the offense entails that a defendant cannot show by a preponderance of the evidence that the weapon was not possessed in "connection with the offense." Nor is there any logical contradiction in our referring to a weapon possessed for purposes of a sentence enhancement with one outcome and then referring to that same weapon for purposes of a sentence reduction with a different outcome.

We conclude, therefore, that sentence enhancement pursuant to

12

§ 2D1.1(b)(1) does not foreclose sentence reduction pursuant to § 5C1.2(a)(2). The scope of activity covered by § 2D1.1 is broader than the scope of activity covered by § 5C1.2. For purposes of § 2D1.1 constructive possession, either physical proximity or participation in a conspiracy, is sufficient to establish that a weapon "was possessed." Whereas for purposes of § 5C1.2 we look to the defendant's own conduct in determining whether the defendant has established by a preponderance of the evidence that the weapon was not possessed "in connection with the offense."

Where § 2D1.1 applies, of course, it will frequently be the case that a defendant who falls under the broader scope of § 2D1.1 will <u>not</u> qualify for a § 5C1.2 reduction because the weapon was actively possessed. Where, however, a defendant falls within the broader scope of § 2D1.1 when the weapon "was possessed" in the passive voice, it will sometimes be the case that the defendant will simultaneously fall within the § 5C1.2 exception because the defendant did not "possess a firearm . . . in connection with the offense" in the active voice. See <u>In re Sealed Case</u>, 105 F.3d at 1462–63. This possibility is precisely what one would expect when the scope of each provision forms different, but overlapping, categories of prohibited behavior in circumstances in which a weapon is proximate to the principal offense.

## III

**AFFIRMED**.