**F I L E D**

**UNITED STATES COURT OF APPEALS**

June 14, 2005

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

HUY MICHAEL TAING,

    Defendant-Appellant.

No. 04-8007
(D.C. No. 03-CR-62-02-J)
(Wyoming)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, **LUCERO**, and **O'BRIEN**, Circuit Judges.

---

Huy Michael Taing pled guilty to possession and conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. 841(a)(1), and (b)(1)(D), § 846. He appeals and we affirm.

Mr. Taing's presentence report (PSR) assessed his base offense level as 20

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, or collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

based on an assertion that he possessed 92.4 pounds, or 42 kilograms, of marijuana. It recommended a two-level enhancement for possession of a handgun, pursuant to U.S.S.G. § 2D1.1(b)(1) (2003), and a three-level downward adjustment for acceptance of responsibility, under U.S.S.G. § 3E1.1(a) and (b). With a total offense level of 19 and a criminal history category of I, Mr. Taing's guidelines range was 30 to 37 months. The district court sentenced him to 30 months imprisonment.

Mr. Taing first contends the district court erred in converting cash found at his residence into a drug equivalent for purposes of determining his offense level. His federal charge stemmed from the recovery of 80 pounds of marijuana during a traffic stop of his brother in Wyoming in March 2003. Mr. Taing admitted at his plea allocution that he was driving in tandem with his brother at the time of the stop, that he had been involved in packing the drugs, and, thus, that his conduct involved 80 pounds of marijuana. Mr. Taing was himself arrested at his place of business in Indiana a month later, after he sold one pound of marijuana to a confidential informant for $1800. At the time of his arrest, he possessed an additional three pounds of marijuana. The police searched his residence and recovered approximately $14,000 cash, in denominations ranging from $100 bills to $1 bills. Using a calculation in the PSR based on the price at which Mr. Taing had sold the one pound of marijuana, the court found that this cash amount

yielded the equivalent of 8.24 pounds of marijuana. Mr. Taing contends he possessed a legitimate explanation for the source of the cash that the court should have credited. He claims he withdrew the cash as advances on his credit cards in February and March 2003. Mr. Taing, who owns a car audio business, said he had intended to use the cash to pay for business construction to begin later that year.

We review the district court's legal interpretations of the sentencing guidelines *de novo* and the factual findings underlying the district court's calculation of the offense level for clear error. *United States v. Moore*, 130 F.3d 1414, 1416 (10th Cir. 1997). Reversal is merited only if "the court's finding was without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *United States v. Shewmaker*, 936 F.2d 1124, 1130 (10th Cir. 1991).

Under U.S.S.G. § 2D1.1(a)(3), the district court must calculate drug quantities when determining the base offense level. In *United States v. Rios*, 22 F.3d 1024, 1027-28 (10th Cir. 1994), we held that sums of cash may be converted to drug equivalents for purposes of sentencing so long as they are determined to be relevant quantities under U.S.S.G. § 1B1.3(a)(2). The district court must find by a preponderance of the evidence "that the cash is attributable to drug sales which were part of the same course of conduct or common scheme or plan as the

conviction count." *Id.* at 1028. In determining whether uncharged drug activities are part of the same course of conduct, the significant elements are similarity, regularity, and temporal proximity of the activities to the conviction count. *Id.*

In this case, the district court did not credit Mr. Taing's explanation for the cash found in his home. Instead, it found that the credit card advances and other evidence that Mr. Taing submitted regarding business construction actually reflected his need for money and his motivation to be involved in the drug trade. Based on the fact that all of the bills were of denominations of $100 or less, the court further determined that "[i]t just seems unlikely to me that that money would have been obtained from the banks in those denominations in that manner and kept by this defendant for purposes of construction." Aplt. App., vol. I at 146. In particular, the court found implausible the notion that as a business person, Mr. Taing would borrow the money as cash advances for construction that he did not intend to begin until later that year. *Id.* "[T]he credibility of a witness and weight of his or her testimony are for the trier of fact alone," *Rios*, 22 F.3d at 1027, and we have no reason to disturb the district court's finding here.

Moreover, the district court further found that Mr. Taing was involved in a "pattern of marijuana dealing" which included the 80 pounds interdicted in Wyoming in March 2003 and the sale of one pound the following month. Aplt. App., vol. I at 145. Even assuming the cash was obtained through credit card

advances, Mr. Taing admitted that he withdrew the money during this same time period. In fact, he conducted two withdrawals three days before the Wyoming interdiction, and one ten days afterwards. This conduct evinces both temporal proximity of the cash withdrawals to Mr. Taing's ongoing illicit activity, and regularity of conduct. The court's finding is supported by a preponderance of the evidence.

Mr. Taing also contends the district court clearly erred in enhancing his sentence by two levels for possession of a dangerous weapon. On the day of his arrest, Mr. Taing delivered one pound of marijuana to a confidential informant. The informant later visited Mr. Taing at his place of business to complete the drug transaction by paying him $1800. When the police arrested Mr. Taing, they found him at his desk in a back room with three pounds of marijuana near his feet. They located a loaded 9 mm Jennings handgun in a cash register drawer in the front room. Mr. Taing said he kept the gun to protect his business and that it was not connected to the offense.

U.S.S.G. § 2D1.1(b)(1) authorizes an enhancement of a defendant's sentence by two levels "[i]f a dangerous weapon (including a firearm) was possessed." This enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.3. The government possesses the initial burden of proving by a

preponderance of the evidence possession of a weapon for purposes of §

2D1.1(b)(1). *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1184-85 (10th

Cir. 2004). The government satisfies that burden if "a temporal and spatial

relation existed between the weapon, the drug trafficking activity, and the

defendant." *Id.* at 1185 (internal quotation omitted). Once this burden is

satisfied, "the defendant may overcome it only if he establishes that it is "clearly

improbable the weapon was connected with the offense." *Id.* (quotation omitted).

Referring to the evidence that there was an ongoing pattern of marijuana

dealing, that the informant had just completed a drug purchase at the business

location, and that Mr. Taing was found with marijuana there, the district court

determined there were "substantial indication[s] of drug transactions going on at

that business location, actual money being transferred and drugs being on the

premises." Aplt. App., vol. I at 146. It concluded Mr. Taing had not established

it was clearly improbable that the gun was connected with the offense. The court

refused to credit Mr. Taing's explanation for the presence of the gun. It examined

pictures Mr. Taing submitted of his business before finding that the business

appeared to have insufficient inventory to merit protection from theft. The court

also noted there was no evidence of a history of robbery, or of a pattern of

violence in the surrounding neighborhood. We are not persuaded the district

court clearly erred in concluding that Mr. Taing possessed the gun within the

meaning of U.S.S.G. § 2D1.1(b)(1).

Finally, Mr. Taing submitted a letter to the court pursuant to FED. R. APP. P. 28(j) referring us to *United States v. Booker*, 125 S. Ct. 738 (2005), as supplemental authority regarding his challenges to the drug quantity and gun possession determinations made by the district court. We do not consider issues raised for the first time in a 28(j) letter, and Mr. Taing has not sought permission to file a supplemental brief addressing *Booker*. *See United States v. Lindsey*, 389 F.3d 1334, 1335 n.1 (10th Cir. 2005). Accordingly, we decline to consider the matter.

For the aforementioned reasons, Mr. Taing's sentence is **AFFIRMED.**

SUBMITTED FOR THE COURT

Stephanie K. Seymour
Circuit Judge