**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 16, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ISMAEL MORALES,

      Defendant-Appellant.

No. 05-7048
(D.C. No. 04-CR-00061-001-WH)
(E.D. of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **HOLMES**, Circuit Judges.

Defendant-Appellant Ismael Morales pleaded guilty to possession of

methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1)

and (b)(1)(A)(viii) and 18 U.S.C. § 2. The district court sentenced him to a term

of imprisonment of 174 months and 60 months of supervised release. Mr.

Morales raises two challenges to his sentence. First, he argues that the district

court improperly treated the United States Sentencing Guidelines ("Guidelines")

as mandatory. Second, he alleges there is insufficient evidence to support the

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

application of a two-level Guidelines enhancement for possession of a "dangerous weapon" under § 2D1.1(b)(1). Our jurisdiction arises under 18 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

Mr. Morales is a Mexican citizen who resided in Arkoma, Oklahoma with his brother, Martin Morales.[1] Drug Enforcement Administration ("DEA") agents devised a plan under which a confidential source would purchase methamphetamine from Mr. Morales. On April 15, 2004, the confidential source made a controlled drug purchase from Mr. Morales at the residence that he shared with his brother. The source wore a hidden camera to record the purchase. Following the April 15th purchase, the confidential source told the DEA that a firearm was on a table near Mr. Morales during the purchase. Only one DEA agent testified at the sentencing hearing. He recounted the confidential source's communication, which another DEA agent who took part in the conversation with the source had relayed to him. The testifying agent said he watched the video of the April 15th purchase, but could not positively identify the presence of a weapon due to the tape's poor pictorial quality.

Five days later on April 20, 2004, DEA agents arranged another controlled purchase through the confidential source – this time from Mr. Morales's brother.

---

[1] To avoid confusion, when we refer to defendant-appellant Ismael Morales by name, we will call him "Mr. Morales"; when we discuss his brother by name, we will use his full name, Martin Morales.

After the purchase, Mr. Morales's brother was arrested outside of his home. On the same day, Mr. Morales also was arrested.

The DEA agents then executed a search warrant and seized a shotgun, bolt-action rifle, a semi-automatic rifle, and a loaded .45 caliber pistol from the bedroom closet of Mr. Morales's brother. They also found in the residence ammunition and a large amount of cash. The testifying DEA agent said that he also personally saw what appeared to be a firearm on a table near the front door. However, he subsequently realized it was a replica gun and decided to leave it in the home.

On June 8, 2004, Mr. Morales was formally charged with possessing with the intent to distribute methamphetamine, in a quantity in excess of 50 grams, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2. Mr. Morales entered a plea of guilty that same day.

At the sentencing on September 23, 2004, Mr. Morales objected to the presentence investigation report ("PSR") arguing that the government presented insufficient evidence to support a sentence enhancement for possession of a "dangerous weapon" (i.e., a firearm) under the Guidelines. He also claimed the Guidelines were unconstitutional under *Blakely v. Washington*, 542 U.S. 296 (2004). The district court, however, found the enhancement was supported by a preponderance of the evidence and adopted the PSR as the factual basis for the sentence. The court sentenced Mr. Morales to 174 months' imprisonment, with

60 months of supervised release. Mr. Morales appealed the sentence, and on March 17, 2005, we vacated the sentence and remanded for resentencing in accordance with *United States v. Booker*, 543 U.S. 220 (2005). *See* Order, Case No. 04-7107 (Mar. 17, 2006) (unpublished).

On April 14, 2005, the district court held a resentencing hearing, and Mr. Morales again objected to the firearm-possession enhancement. With approval from the parties, the district court took judicial notice of the testimony and evidence presented at the initial sentencing hearing. It then overruled Mr. Morales's objection and sentenced him to 174 months' imprisonment and 60 months of supervised release – the same sentence it had imposed in the prior sentencing. Mr. Morales timely appealed.

## II. DISCUSSION

"Even after *Booker*, when reviewing a district court's application of the Sentencing Guidelines, we review legal questions *de novo* and . . . any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006) (internal quotation marks and alterations omitted). The ultimate sentence is then reviewed for reasonableness. *See, e.g., United States v. Kristl*, 437 F.3d 1050, 1053-54 (10th Cir. 2006).

**A.** **The District Court Did Not Apply the Guidelines in A Mandatory Fashion and, Consequently, Did Not Err**

On appeal, Mr. Morales contends that the district court "strictly adhered" to the Guidelines and thereby contravened *Booker*. Mr. Morales argues that he would have received a lower sentence if the district court had not erred in giving too much weight to the Guidelines.

In *Booker*, the Supreme Court held that mandatory application of the Guidelines to judge-found facts (other than a prior conviction) violates the Sixth Amendment. 543 U.S. at 232-33. To cure the constitutional problems, the Court excised provisions of the Sentencing Reform Act, effectively making the Guidelines advisory instead of mandatory. *See Wolfe*, 435 F.3d at 1292 n.1.

*Booker* provides that "while not bound to apply the Guidelines, [a district court] must consult those Guidelines and take them into account when sentencing." *Booker*, 543 U.S. at 264. Importantly, *Booker* did not preclude a district court in exercising its discretion from giving significant weight to the Guidelines, which embody the expert judgment of the U.S. Sentencing Commission. *See United States v. Terrell*, 445 F.3d 1261, 1265 (10th Cir. 2006) ("[W]e cannot say that a district court errs when it gives a high degree of weight to the Guidelines in its sentencing decisions."). In this regard, we noted in *United States v. Crockett*, 435 F.3d 1305 (10th Cir. 2006), that a district court may appropriately give "a high level of deference" to recommendations provided in

the Guidelines to keep sentencing moving "'in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.'" 435 F.3d at 1318 (quoting *Booker*, 543 U.S. at 264); *see Terrell*, 445 F.3d at 1264 (noting that "[e]ven after *Booker*, deference to the Guidelines is essential" to advance the objective of sentencing uniformity).

The district court was well aware of the advisory nature of the Guidelines after *Booker* and the permissible scope of its discretion as it relates to them. The court explicitly stated:

> While the Court recognizes it is not bound by the sentencing guideline calculations, the Court has considered them and finds them to be advisory in nature. Also taken into account when fashioning a sentence for this defendant is his cooperation with authorities and timeliness of his plea in this case. The sentence prescribed by this Court reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense. This sentence affords deterrence to criminal conduct, protects the public from further crimes of this defendant and provides correction treatment for the defendant in the most effective manner.

R. vol. III, Tr. Sentencing Hearing at 14-15 (April 14, 2005).

Recognizing the Guidelines to be advisory, the district court properly consulted them. However, it also reviewed the PSR, weighed the testimony presented at sentencing, and considered the § 3553(a) factors. Insofar as the district court in fact afforded significant weight to the Guidelines in fashioning Mr. Morales's sentence, it did not err.

-6-

**B.** **The District Court Did Not Err in Incorporating into Mr. Morales's Sentence A Two-Level Enhancement Under Guidelines § 2D1.1(b)(1)**

Mr. Morales argues that the government produced insufficient evidence to support a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon (i.e., a firearm). Specifically, he contends that because the authorities seized the guns from his brother's room five days following his admitted drug transaction, the government failed to meet its burden of demonstrating that he possessed the guns. We disagree.

The Guidelines provide a sentence enhancement for weapon possession to reflect the "increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1 cmt. n.3. Section 2D1.1(b)(1) applies if the government can prove by a preponderance of the evidence that a weapon was present, unless the defendant can show "it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.3; *see United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1184-85 (10th Cir. 2004). Generally, possession under § 2D1.1(b)(1) can be "satisfied by showing mere proximity to the offense." *United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir. 1997).

Under Guidelines § 1B1.3(a), a defendant is held accountable for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant" that were part of the same course of conduct or common scheme or plan as the offense of conviction. U.S.S.G. §

1B1.3(a). Section 1B1.3's commentary further explains that a defendant may be held responsible for the "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable." *United States v. McFarlane*, 933 F.2d 898, 899 (10th Cir. 1991) (internal quotation marks omitted); *see* U.S.S.G. § 1B1.3 cmt. n.2. It is of no moment that those engaged in jointly-undertaken criminal activity are not formally charged with a conspiracy offense. *Id.* (defining "jointly undertaken criminal activity," as focusing on conduct undertaken "by the defendant in concert with others, whether or not charged as a conspiracy"); *see* U.S.S.G. § 1B1.3 cmt. n.1.

Here, Mr. Morales was charged and convicted of a drug trafficking offense, which included an aiding and abetting theory of liability. *See* R. vol. I, Doc. 7 (criminal information); 18 U.S.C. § 2; *see generally United States v. Cook*, 745 F.2d 1311, 1315 (10th Cir. 1984) ("It should be noted that aiding and abetting is not an independent crime under 18 U.S.C. § 2; the statute provides no penalty, but merely abolishes the common-law distinction between principal and accessory.") Mr. Morales has not disputed that he was involved in the offense with his brother (i.e., Martin Morales). For instance, he failed to object to the PSR's factual recitations, which revealed his jointly-undertaken drug trafficking with his brother. *See* R. vol. II, PSR ¶ 17 ("In this case, Ismael and Martin Morales were involved in the distribution of methamphetamine."). Accordingly, the district court could properly attribute to Mr. Morales all of the reasonably foreseeable

acts undertaken by his brother in furtherance of their jointly-undertaken criminal activity. *See McFarlane*, 933 F.2d at 899 (finding that §§ 2D1.1(b)(1) and 1B1.3(a)(1) together allow a sentencing court "to attribute to a defendant weapons possessed by his codefendants if the possession of weapons was known to the defendant or reasonably foreseeable by him").

We conclude that Martin Morales's possession of firearms in the residence that he shared with Mr. Morales was reasonably foreseeable to Mr. Morales. The residence was the locus of the brothers' drug-trafficking operation. We have recognized that firearms are "tools of the trade" for drug traffickers. *See United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991) (noting firearms and large amounts of cash are viewed as "tools of the trade" for drug trafficking); *accord United States v. Soto*, 959 F.2d 1181, 1187 (2d Cir. 1992) ("firearms are as much tools of the trade as are commonly recognized articles of narcotics paraphernalia" (internal quotation marks omitted)).

Validating this view, the agents seized firearms from the bedroom closet of Mr. Morales's brother on the day that he sold methamphetamine to the confidential source. That was only five days after the confidential source purchased methamphetamine at the residence from Mr. Morales. There is no evidence in the record to suggest that Mr. Morales's brother (Martin Morales) attempted to conceal the presence of the firearms from Mr. Morales. For

example, there is no evidence that Martin Morales took special steps to limit Mr. Morales's access to the firearms.[3]

The referenced facts strongly support the conclusion that the firearms were reasonably foreseeable to Mr. Morales. Consequently, under the Guidelines, Mr. Morales is accountable for the firearms.[4] And it hardly can be gainsaid that the firearms were in close proximity to the drug-trafficking offense. *See United States v. Heckard*, 238 F.3d 1222, 1233 (10th Cir. 2001) (holding that government had "met its burden of proof regarding possession in proximity to the offense," when gun found "physically near" the defendant in a location that was "repeatedly the locus for drug trafficking" 24 days following defendant's "last documented drug activity").

---

[3] Mr. Morales would likely offer the following retort: "No testimony was presented that Appellant had access to . . . the guns seized from his brother's bedroom." Aplt. Br. at 5. However, there was abundant evidence that the firearms were in a residence that Mr. Morales shared with his brother. Absent proof to the contrary, one may reasonably infer that he in fact had access to them. *See United States v. McFarlane,* 933 F.2d 898, 899 (10th Cir. 1991). In presenting his objections to the U.S. Probation Office, Mr. Morales asserted that the firearms were in his brother's bedroom "under lock and key." R. vol. II, Letter of Defense Counsel to U.S. Probation Office at 1 (Aug. 20, 2004) (PSR attachment). No evidence in the record supports that assertion.

[4] Mr. Morales argues that the district court should have focused on whether he personally possessed dangerous weapons and that it improperly held him accountable for firearms associated with his brother. Because the presence of those firearms was reasonably foreseeable to Mr. Morales, as a matter of law, this argument is without merit.

If there is sufficient proof that a dangerous weapon (chargeable to defendant) was in proximity to the drug offense, the burden shifts to the defendant to demonstrate that it is clearly improbable the weapon was connected to the offense. *E.g., Zavalza-Rodriguez*, 379 F.3d at 1184-85. Mr. Morales, however, has made no meaningful attempt to carry this burden; the focus of his argument was the alleged "weak nature of the Government's evidence of firearm possession." Aplt. Br. at 7. Accordingly, we conclude that the district court did not err in applying a § 2D1.1(b) enhancement to Mr. Morales.

The district court's sentencing order is **AFFIRMED.**

Entered for the Court

Jerome A. Holmes
Circuit Judge