NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1554
_____

UNITED STATES OF AMERICA

v.

ALBERTO TORRES,
                              Appellant

_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 2-10-cr-00104-002
(Honorable Lawrence F. Stengel)
_____

Argued Pursuant to Third Circuit LAR 34.1(a)
June 13, 2013

Before: SCIRICA, HARDIMAN, VAN ANTWERPEN, *Circuit Judges*

(Filed: July 12, 2013)


Robert Epstein, Esq.
Brett G. Sweitzer, Esq. [ARGUED]
Federal Community Defender Office for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA  19106

       *Counsel for Appellant*

Randall Hsia, Esq. [ARGUED]
Office of the United States Attorney
615 Chestnut Street

Suite 1250
Philadelphia, PA 19106

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Alberto Torres pled guilty to conspiracy to distribute cocaine and distribution of five kilograms or more of cocaine. A loaded handgun was found in Torres' apartment. The District Court concluded the gun was connected to the conspiracy, increased Torres' offense level by two under U.S.S.G. § 2D1.1(b)(1), and denied his motion for a two-level decrease under the safety valve provision found at U.S.S.G. § 5C1.2. We will affirm.

I.

Torres was a member of a drug distribution conspiracy that distributed between 150 and 200 kilograms of cocaine from 2007 to 2010. In March 2007, Torres and co-defendant Jaime Duran met with a cooperating defendant, KW, in St. Louis, Missouri. Torres and Duran agreed to supply KW, who was from Philadelphia, with cocaine. Torres, who was from California, was designated the East Coast representative for the conspiracy and rented an apartment in Bear, Delaware, later moving to Wilmington. Torres supplied KW with cocaine by storing the cocaine in his car and exchanging vehicles with KW. KW was arrested in early 2009.

After KW's arrest, Duran contacted KW's wife in an attempt to collect money for cocaine supplied to KW. The FBI sent in a cooperating informant ("CI") who pretended

2

to be KW's cousin. Torres met CI and an undercover FBI agent at a Delaware parking lot, and Torres placed a Home Depot storage box containing 23.94 kilograms of cocaine into the undercover agent's vehicle. Two days later, Torres and his co-conspirators were arrested.

Torres gave the FBI permission to search his apartment in Wilmington. Agents recovered a loaded .45 caliber pistol and box of ammunition, both hidden underneath a sofa cushion in a bedroom. Torres admitted that the pistol was his, and it is undisputed he owned the pistol legally. Agents also recovered Sharpies, rubber bands, latex gloves, and trash bags, which the government contends are drug packaging materials.

Torres pled guilty to conspiracy to distribute cocaine (21 U.S.C. § 846) and distribution of five kilograms or more of cocaine (21 U.S.C. § 841(a)(1), (b)(1)(A)). At sentencing, Torres objected to a two-level increase to his offense level under U.S.S.G. § 2D1.1(b)(1), which applies "[i]f a dangerous weapon (including a firearm) was possessed." Torres argued he owned the gun for personal protection and that it had no connection to the drug conspiracy. There was no evidence Torres ever carried the gun during any drug transaction. The District Court denied the objection.

Torres also argued he was eligible for a two-level reduction under the safety valve provision, U.S.S.G. §§ 2D1.1(b)(16) and 5C1.2. To be eligible for the safety valve, Torres must not have possessed a weapon in connection with the drug trafficking offense. The court concluded Torres did not meet this requirement not only because the gun was possessed in an apartment that Torres only had as part of the drug conspiracy, but also because items that could be used to package drugs were found nearby. The court

3

sentenced Torres to 180 months' imprisonment, varying down from the Guideline range of 210-262 months. Torres appeals.[1]

## II.

Torres contends the District Court erred by applying the two-level increase to his offense level under § 2D1.1(b)(1). He argues the government was required to prove a connection between the firearm and the drug trafficking offense and that the government failed to meet its burden because there was no evidence he ever carried the gun during any transaction or that any drugs were ever stored or packaged in the apartment where the firearm was kept.

U.S.S.G. § 2D1.1 provides the base levels and enhancements for drug trafficking crimes. Section 2D1.1(b)(1) states: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." The Application Note explains "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet." U.S.S.G. § 2D1.1 cmt. n.11.[2]

The weapons enhancement will apply if the government proves that the firearm was present during the offense, and that it is not "clearly improbable that the weapon was connected with the offense." *United States v. Thornton*, 306 F.3d 1355, 1357 (3d Cir.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.
[2] In the 2011 version of the Guidelines, under which Torres was sentenced, this explanation is located in Application Note 3.

2002) (quotation omitted).To meet the first step, "the prosecution need only prove that the defendant possessed the weapon during the currency of the offense, not necessarily that he actually used it in perpetrating the crime or that he intended to do so." *United States v. McDonald*, 121 F.3d 7, 10 (1st Cir. 1997); *see also United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1185 (10th Cir. 2004) (requiring "a temporal and spatial relation . . . between the weapon, the drug trafficking activity, and the defendant" (quotation omitted)). To determine whether it was not "clearly improbable" that the firearm was connected to the offense, we consider (1) "the type of gun involved, with clear improbability less likely with handguns than with hunting rifles"; (2) "whether the gun was loaded"; (3) "whether the gun was stored near the drugs or drug paraphernalia"; and (4) "whether the gun was accessible." *United States v. Drozdowski*, 313 F.3d 819, 822-23 (3d Cir. 2002). We review the application of the enhancement for clear error. *United States v. Manigan*, 592 F.3d 621, 631 (4th Cir. 2010); *United States v. Cooper*, 274 F.3d 230, 245 (5th Cir. 2001) ("This is a factual finding and thus reviewed for clear error.").

Torres' challenge focuses on the first step. He argues there is no evidence the gun was "present" during any drug trafficking because he never carried it during any transaction and no trafficking activity took place in the apartment. But Torres participated in a years-long conspiracy. The conspiracy was based in California and Torres kept the Delaware apartment solely for the purpose of facilitating the conspiracy. He only travelled to Delaware to distribute drugs. The District Court could reasonably infer the apartment was a key locus of the conspiracy and thus the gun had "a temporal and spatial

relation" to the conspiracy. *Zavalza-Rodriguez*, 379 F.3d at 1185 (quotation omitted).

Under the four factors of *Drozdowski*, it is not clearly improbable the gun was connected to the offense. The gun was a handgun and was loaded. And being stored under a couch cushion made it easily accessible. Accordingly, we see no clear error. [3]

### III.

Torres also challenges the court's denial of his motion for a two-level decrease in offense level under the safety valve provision of U.S.S.G. § 2D1.1(b)(16). That provision applies if the defendant meets the five criteria of U.S.S.G. § 5C1.2(a): (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or possess a dangerous weapon "in connection with the offense"; (3) the offense did not result in death or serious bodily injury; (4) the defendant did not have a leadership role in the offense; and (5) the defendant truthfully provided all information about the offense to the government. The District Court rejected Torres' motion based on the second requirement, finding he "possessed the gun in . . . connection" with the drug conspiracy. Our review is for clear error. *United States v. Richards*, 674 F.3d 215, 219-220 (3d Cir. 2012). For the reasons discussed above, we will not upset the court's finding.

### IV.

---

[3] Torres argues the District Court interpreted the Guideline to only require possession of the firearm, and thus never made the necessary finding of a connection between the gun and the conspiracy when ruling on the § 2D1.1(b)(1) enhancement. Even if so, the court found Torres possessed the firearm in connection with the conspiracy when ruling on the safety valve provision, a finding that satisfies the government's burden under § 2D1.1(b)(1). *See United States v. Agnew*, 407 F.3d 193, 196 (3d Cir. 2005) ("We may affirm on any ground supported by the record.").

For the foregoing reasons, we will affirm the judgment and sentence of the District Court.