FILED
United States Court of Appeals
Tenth Circuit

December 15, 2020

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SANTOS CASTILLO-QUINTANA
    Defendant.

No. 19-3147
(D.C. No. 17-20043-02-CM)
(D. Kan.)

## ORDER AND JUDGMENT[*]

Before **HOLMES**, **SEYMOUR** and **MORITZ**, Circuit Judges.

On December 10, 2018, Santos Castillo-Quintana pled guilty to one count of

conspiracy to distribute and possess with intent to distribute more than five kilograms of

cocaine in violation of 21 U.S.C. §§ 841 and 846, and one count of possession with intent

to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 841. The

district court sentenced him to 120 months for each count, to be served concurrently. Mr.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously
that oral argument would not materially assist in the determination of this appeal. *See* Fed.
R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without
oral argument. This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however,
for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Castillo-Quintana appeals, contending the district court erred in failing to apply a safety valve reduction under 18 U.S.C. § 3553(f) and U.S.C.G. § 5C1.2.[1]  We affirm.

On August 10, 2017, as part of an ongoing investigation into the drug trafficking activities of Heriberto Armendariz-Garcia, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) were surveilling Armendariz-Garcia's residence/ranch in Wellsville, Kansas.  An undercover agent was present at the ranch for the purpose of purchasing cocaine and methamphetamines.  During the surveillance, the agents observed a vehicle driven by Jesus Quintana and hauling a car trailer carrying a black Chrysler 200 arrive near a barn on the ranch.  Mr. Castillo-Quintana was a passenger in that vehicle. The agents observed Jesus Quintana and Mr. Castillo-Quintana removing external portions of the Chrysler 200 to expose concealed storage compartments containing seven kilograms of cocaine.  The packages of cocaine were unloaded by Jesus Quintana, Mr. Castillo-Quintana, and another individual who placed them on a table in Mr. Armendariz-Garcia's office (a/k/a the "trophy room"), located in the southwest area of his garage.  While the men were in the office, video evidence[2] depicts Armendariz-Garcia picking up a rifle and displaying it to the undercover agent.  The video also shows that Armendariz-Garcia handed the weapon, a fully functional semiautomatic rifle, to Mr. Castillo-Quintana who

---

[1] Mr. Castillo-Quintana raises five issues regarding his sentencing but admits that "since he was sentenced to the statutory minimum sentence, he must first prevail on the issue of being safety valve eligible" for the other issues to be considered.  Aplt. Br. at 3.

[2] The undercover agent involved in the drug transaction was equipped with a video and audio recording device which produced the video admitted into evidence as Government's Exhibit 1.  Rec., vol. II at 43-44.

manipulated it for approximately thirteen seconds before handing it off to another man. Rec., RSV.1 at 14:08:36-14:08:49. Mr. Castillo-Quintana concedes that he possessed the firearm for thirteen seconds but argues that he did so after the drug transaction was completed and that the firearm "did not facilitate this transaction." Aplt. Br. at 16. Based on this distinction, he contends the district court erred in finding that he was ineligible for safety valve relief. We disagree.

Congress enacted mandatory-minimum sentencing provisions for a variety of crimes, including the drug offenses involved in this case. *See, e.g.*, 21 U.S.C. §§ 841(a)(1), (b)(1)(B). The safety valve is a congressionally enacted exception to mandatory minimum sentences, permitting a sentence under the sentencing guidelines for less culpable defendants who meet certain criteria specified in 18 U.S.C. § 3553(f)(1)-(5). The defendant bears the burden of proving that all five criteria are satisfied. *United States v. Verners*, 103 F.3d 108, 110 (10th Cir. 1996). The only issue presented in this appeal is whether Mr. Castillo-Quintana satisfied the second criteria "that he did not . . . possess a firearm . . . in connection with the offense." 18 U.S.C. § 3553(f)(2).

We review the district court's denial of safety-valve relief for clear error, "giving due deference to the district court's application of the Sentencing Guidelines to the facts." *United States v. Hargrove*, 911 F.3d. 1306, 1325 (10th Cir. 2019) (quoting *United States v. Zavalza-Rodriquez*, 379 F.3d. 1182, 1184 (10th Cir. 2004)). "Clear error exists if a factual finding is wholly without factual support in the record, or [if] after reviewing the evidence we are definitively and firmly convinced that a mistake has been made." *Id.* (internal

citations and quotations omitted).

For purposes of evaluating eligibility for the safety valve "the defendant's own conduct" is the focal inquiry. *Id*. at 1130. The government's video shows Mr. Castillo-Quintana holding the rifle and moving it around for thirteen seconds, a fact Mr. Castillo-Quintana concedes. Aplt. Br. at 8-11, 16. In denying Mr. Castillo-Quintana's objection to the addition of two levels for possession of a firearm, the district court noted:

> [E]ven though defendant may not have seen the gun until after the drug transaction, the Court determines that he should have expected guns to be present, also that there was a presence of an accomplice for the delivery, as well as the large quantity of drugs that was being delivered.
>
> *Although the weapon was not brought out until after the drug transaction was complete, defendant has not shown that it was clearly improbable the weapon was connected to the offense* . . . .
>
> The Court would find after review and viewing of Exhibit No. 1 the government has shown and there is sufficient evidence that defendant did, in fact, possess the firearm. He held it more than a brief amount of time. And, also, as he was holding it . . ., it does appear that he did, in fact, handle it in a way that supports the statement that he manipulated the firearm during the time it was in his possession.

Rec., vol. II at 75-76 (emphasis added). The district court also specifically found that "it was not a constructive possession; it was actual possession of the weapon" in connection with the offense. *Id*. at 78. Finally, when sentencing Mr. Castillo-Quintana, the district court added:

> In the end the Court did believe that as a matter of law, based on the evidence that was presented, that you, in fact, did possess the weapon. It showed on the video, on the DVD playing in Exhibit No. 1 *you're handling the weapon* and, again, the fact that it was *in the immediate area of the drugs, that, again, are visible*, as a matter of law the Court believed that the government had met their burden by a preponderance of the evidence to show you possessed the weapon as it relates to

4

that objection and as it affected the safety valve considerations as well. *Id*. at 87 (emphasis added).

The ruling by the district court is entirely consistent with *Hargrove*, in which we held that where there is actual possession of a firearm, "the requirement of active possession—based on defendant's own conduct—may be rounded out and completed by further evidence that the possessed firearm was in close proximity to the offense and had the potential to facilitate it." *Hargrove*, 911 F.3d. at 1331. Here, the firearm was in close proximity to the cocaine being distributed and had the potential to protect the drug traffickers and thereby to facilitate the offense. This point was raised by the government, Aple. Br. at 13, and Mr. Castillo-Quintana did not reply or otherwise dispute it. The district court did not clearly err in finding that Mr. Castillo-Quintana possessed a firearm for thirteen seconds in connection with the offense. Accordingly, it was not error for the court to deny Mr. Castillo-Quintana relief under the safety valve provision.

As conceded by Mr. Castillo-Quintana, failure to prevail on the foregoing issue renders the remaining issues raised on appeal moot. We therefore affirm the defendant's sentence.

Entered for the Court

Stephanie K. Seymour
Circuit Judge

5