**UNITES STATES of America,**
**Plaintiff–Appellee,**

v.

**Veronica PENA–SARABIA,**
**Defendant–Appellant.**

No. 01–3228.

United States Court of Appeals,
Tenth Circuit.

July 19, 2002.

984

Submitted on the briefs: * James E. Flory, United States Attorney, and Nancy Landis Caplinger, Assistant United States Attorney, Topeka, KS, for Plaintiff–Appellee.

James T. George, Lawrence, KS, for Defendant–Appellant.

Before EBEL, Circuit Judge, BRORBY, Senior Circuit Judge, and MURPHY, Circuit Judge.

BRORBY, Senior Circuit Judge.

Police found approximately two kilograms of cocaine and a .9mm semi-automatic handgun in a home Veronica Pena–Sarabia shared with her husband. After the district court denied her motion to suppress evidence, Ms. Pena–Sarabia entered a conditional guilty plea to possession with intent to distribute the cocaine in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Ms. Pena–Sarabia to sixty months in prison under the mandatory minimum rule of 21 U.S.C. § 841(b)(1)(B). Relying on *United States v. Hallum*, 103 F.3d 87, 90 (10th Cir.1996), *cert. denied*, 520 U.S. 1218 (1997), the district court determined Ms. Pena–Sarabia was ineligible for the "safety valve" provisions of 18 U.S.C. § 3553(f) because her husband's possession of a handgun was foreseeable.[1] On appeal, Ms. Pena–Sarabia argues (1) the district court erred in

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

1. The United States Sentencing Commission has adopted the language of § 3553(f) verbatim at § 5C1.2 of the Sentencing Guidelines. United States Sentencing Commission, *Guidelines Manual* (U.S.S.G.), § 5C1.2 (Dec.2000).

denying her motion to suppress because the warrantless search of her home was not consensual, and (2) she was eligible for a shorter sentence under "safety valve" provisions because the district court found she had no knowledge of her husband's firearm. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). After careful consideration, we affirm the district court's denial of the motion to suppress, and remand with instructions to vacate Ms. Pena–Sarabia's sentence and to resentence her in accordance with this opinion.

## BACKGROUND

Local police working with the Drug Enforcement Administration obtained information from a confidential informant indicating Ms. Pena–Sarabia and her husband, Orlando Payan, had a large quantity of cocaine in their Kansas City, Kansas, home. Police decided to knock on the door and try to get consent to search the house. The officers did not have a search warrant. Two plainclothes agents wearing Drug Enforcement Administration jackets, and a uniformed police officer approached the residence and knocked on the front door. When an occupant of the house peered out a window, Officer Norma Lorenzo asked, "Can you come out to the front door, please?" Approximately thirty seconds later, Ms. Pena–Sarabia opened the door.

Testimony at the suppression hearing differed regarding the events that followed. Officer Lorenzo testified she showed Ms. Pena–Sarabia her badge and asked, "Do you mind if we come in?" According to Officer Lorenzo, Ms. Pena–Sarabia responded, "Come on in." Officer Lorenzo testified she asked Ms. Pena–Sarabia whether there were any illegal narcotics in the house and Ms. Pena–Sarabia said there were not. Officer Lorenzo testified she asked "Well, like, you don't have any drugs. Would you give me consent to search the residence?" Officer Lorenzo testified Ms. Pena–Sarabia stated, "No, it's okay, go ahead." Testimony from a second officer, Detective Phillips, tended to corroborate this sequence of events. However, Ms. Pena–Sarabia testified the agents "just walk[ed] in, and then while we're sitting there, they tell us that, 'We're going to search the house,' so I don't think we have any option, so we just-he just says yes."

The district court found the testimony of the police officers more credible, explaining their testimony was calm, candid, and evinced better recall of detail. The district court found Ms. Pena–Sarabia was unsure of her version of the events and found her recollection of detail appeared to be contrived or confused. The district court also noted police did not draw or show their guns and neither Ms. Pena–Sarabia nor her husband were restrained. Judging from the totality of circumstances, the district court determined Ms. Pena–Sarabia's consent to search the home "was voluntarily given and not the result of coercion."

During their search of the residence, police found a kilogram package of cocaine lying next to a loaded semiautomatic .9mm handgun under the couple's bed. Officers also found a second kilogram package of cocaine inside a purse located under some clothing on the floor of the bedroom closet. Ms. Pena–Sarabia maintains she had no knowledge of the gun. The district court agreed and made a specific factual finding Ms. Pena–Sarabia "did not know that the gun was there."

Ms. Pena–Sarabia eventually entered a conditional guilty plea, reserving her right to appeal the district court's denial of her motion to suppress. Because of the amount of drugs involved, Ms. Pena–Sarabia was subject to the statutory mandatory

minimum sentence of five years under 21 U.S.C. § 841(b)(1)(B). She sought relief from the mandatory minimum under the "safety valve" provisions of U.S.S.G. § 5C1.2. However, § 3553(f)(2) forecloses relief from mandatory minimum sentences for offenders who possess a firearm in connection with the offense. 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(2). The district court determined because it was foreseeable her husband would possess the handgun, Ms. Pena–Sarabia was not eligible for relief under the safety valve. The district court then sentenced Ms. Pena–Sarabia to five years in prison.

## DISCUSSION

### I.

On appeal, Ms. Pena–Sarabia first asks us to reverse the district court's denial of her motion to suppress. Specifically, Ms. Pena–Sarabia argues "[t]he district court erred in holding [her] alleged consent to the search of her residence was unequivocal and specific and was not the product of duress or coercion, express or implied." "When reviewing a district court's grant or denial of a motion to suppress, we accept the court's findings of fact, unless clearly erroneous and consider the evidence in the light most favorable to the government." *United States v. Pena*, 143 F.3d 1363, 1365 (10th Cir.), *cert. denied*, 525 U.S. 903, 119 S.Ct. 236, 142 L.Ed.2d 194 (1998). Whether a defendant freely and voluntarily consents to a search is a question of fact determined from the totality of the circumstances. *Id.*

"[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The government bears the burden of proving a valid consent to a warrantless search. *United States v. Cody*, 7 F.3d 1523, 1526 (10th Cir.1993). "First, [the government] must present clear and positive testimony that consent was unequivocal and specific and freely and intelligently given. Second, the government must show that the police did not coerce the defendant into granting his consent." *Pena*, 143 F.3d at 1366 (quotation marks and citation omitted).

The government presented clear and positive testimony Ms. Pena–Sarabia freely and intelligently gave her specific and unequivocal consent to the search of her home. In response to Officer Lorenzo's request, Ms. Pena–Sarabia said "go ahead." Although Ms. Pena–Sarabia denied giving this response at the suppression hearing, the district court simply did not believe her. The district court explained, "Detective Phillips and Officer Lorenzo were calm, candid, and had excellent recall of detail. The defendant on the other hand, was nervous and unsure of her version of events." Accordingly, the district court stated, "[t]o the extent that the testimony by Officer Lorenzo and Detective Phillips conflicts with the testimony by the defendant, the court accepts the officers' testimony." "Evaluation of the credibility of witnesses, the weight to be given the evidence, and inferences to be drawn from the evidence are for the district court." *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir.1996). Although the police did not inform Ms. Pena–Sarabia of her right to refuse to allow the search, proof of knowledge of the right to refuse consent is not a "necessary prerequisite to demonstrating a 'voluntary' consent." *Schneckloth*, 412 U.S. at 232–33, 93 S.Ct. 2041. The record amply supports the district court's evaluation of the credibility of the witnesses.

The record also indicates Ms. Pena–Sarabia's consent was not produced through coercion or duress. In this regard, " 'a court should consider, *inter alia,* physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant within the totality of the circumstances'." *Pena,* 143 F.3d at 1367 (quoting *United States v. McCurdy,* 40 F.3d 1111, 1119 (10th Cir.1994)). In her brief, Ms. Pena–Sarabia argues the "rapid fire questioning" and "show of authority" imply coercion. However, Officer Lorenzo testified Ms. Pena–Sarabia voluntarily allowed police to "come on in." There is no contention the police physically mistreated either Ms. Pena–Sarabia or her husband. The police did not draw or display their weapons. Ms. Pena–Sarabia does not argue the police made any threats or promises, or induced consent through trickery. Moreover, Ms. Pena–Sarabia does not argue she lacked the physical or mental capacity to refuse consent. Consequently, the record supports the district court's conclusion Ms. Pena–Sarabia's consent was not the result of coercion or duress. Therefore, under the totality of the circumstances, we hold the district court did not err in finding the government proved the officers had consent to search Ms. Pena–Sarabia's home.

## II.

■ Next, Ms. Pena–Sarabia argues the district court incorrectly sentenced her under the mandatory minimum rule of 21 U.S.C. § 841(b)(1)(B). Specifically, Ms. Pena–Sarabia argues she is eligible for sentencing under the "safety valve" provisions of U.S.S.G. § 5C1.2, even though her co-defendant possessed a firearm. Ms. Pena–Sarabia maintains the handgun should not be attributed to her for purposes of U.S.S.G. § 5C1.2 because she had no knowledge of it. The government argues Ms. Pena–Sarabia should nevertheless be held accountable for the foreseeable acts of her husband undertaken in their joint criminal activity. The scope and meaning of 18 U.S.C. § 3553(f) is a question of law we review de novo. *United States v. Acosta–Olivas,* 71 F.3d 375, 378 & n. 3 (10th Cir.1995).

In general, where a violation of 21 U.S.C. § 841 involves more than 500 grams of cocaine, the defendant is sentenced to "not less than 5 years." 21 U.S.C. § 841(b)(1)(B). However, Congress has provided a "safety valve" to the minimum sentence requirement for drug offenders meeting certain criteria. 18 U.S.C. § 3553(f). The United States Sentencing Commission has adopted these criteria verbatim in U.S.S.G. § 5C1.2. Among other requirements, "the defendant [must] not ... possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense" in order to qualify for relief. U.S.S.G. § 5C1.2(2). In *Hallum,* 103 F.3d 87, a Tenth Circuit panel held a defendant's possession of a firearm for purposes of U.S.S.G. § 5C1.2 could be established by another person's reasonably foreseeable possession of a firearm in furtherance of a joint criminal activity. *Hallum,* 103 F.3d at 90. Upon further review, we conclude this holding is contrary to controlling law and has been rejected by every other circuit to pass on the issue.

■ Application note four of the commentary to § 5C1.2 states "Consistent with § 1B1.3 (Relevant Conduct), the term 'defendant,' as used in subdivision (2) [of § 5C1.2], limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 5C1.2, comment.

(n.4). Using terms substantially identical to those in note four of § 5C1.2, subsection (1)(A) of § 1B1.3(a) defines relevant conduct as acts "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 1B1.3(a)(1)(A). Notably absent from note four of § 5C1.2 is any language mirroring the second definition of relevant conduct provided in subsection (1)(B) of § 1B1.3(a) which discusses the acts of others acting in concert with the defendant. Subsection(1)(B) defines as relevant conduct "all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

By foreclosing application of the safety valve based on a joint criminal actor's reasonably foreseeable possession of a firearm, the *Hallum* decision effectively incorporated relevant conduct under subsection (1)(B) of § 1B1.3 as an additional safety valve requirement. This holding renders superfluous the language in § 5C1.2(2) indicating the safety valve may apply if the defendant did not possess a firearm "or induce another participant to do so." U.S.S.G. § 5C1.2(2). Demonstrating inducement would not be necessary if the mere reasonable foreseeability of possession by a joint criminal actor was sufficient to foreclose application of the safety valve. Such a reading is also contrary to the language in § 5C1.2 application note four which expressly *"limits"* a defendant's accountability for purposes of the safety valve "to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 5C1.2, comment. (n.4). Finally, *Hallum* did not recognize § 1B1.3(a)'s two-prong definition of relevant conduct applies only "unless otherwise specified." U.S.S.G. § 1B1.3(a). Application note four's express limitation of accountability to the defendant's actions is precisely such a specification and is thus "consistent with § 1B1.3." U.S.S.G. § 5C1.2, comment. (n.4).

The interpretation of § 5C1.2 in *Hallum* is also contrary to the congressional policy underlying the mandatory minimum safety valve. The basic purpose of the safety valve was "to permit courts to sentence less culpable defendants to sentences under the guidelines, instead of imposing mandatory minimum sentences." *Acosta–Olivas,* 71 F.3d at 378. Otherwise, the "least culpable offenders may receive the same sentences as their relatively more culpable counterparts." H.R.Rep. No. 103–460, 103d Cong., 2d Sess., 1994 WL 107571 (1994). The D.C. Circuit has persuasively explained, "[g]iven the great likelihood that at least one member of a drug distribution conspiracy will possess a firearm, incorporating co-conspirator liability into the safety valve's weapon element would render the safety valve virtually useless." *In re Sealed Case (Sentencing Guidelines' "Safety Valve"),* 105 F.3d 1460, 1463 (D.C.Cir.1997) (citation omitted).

For these reasons, our sister circuits passing on the issue have unanimously rejected the interpretation of § 5C1.2 in *Hallum.* *United States v. Clavijo,* 165 F.3d 1341, 1343 n. 4 (11th Cir.1999) (per curiam) ("Only the Tenth Circuit has reached the opposite conclusion."); *United States v. Wilson,* 114 F.3d 429, 432 (4th Cir.1997) ("[T]he other courts of appeals that have addressed this issue agree that for limited purposes of applying this provision, possession of a firearm by a coconspirator is not attributed to the defendant."); *In re Sealed Case,* 105 F.3d at 1462 ("Omission of this co-conspirator liability language [from § 5C1.2, comment. (n.4)], we think, can hardly have been inadvertent."); *United States v. Wilson,* 105 F.3d 219, 222 (5th Cir.) ("[I]n determining a defendant's eligibility for the safety

valve, § 5C1.2(2) allows for consideration of only the defendant's conduct, not the conduct of his co-conspirators."), *cert. denied,* 522 U.S. 847, 118 S.Ct. 133, 139 L.Ed.2d 82 (1997). *See also* Thomas W. Hutchinson, et al., *Federal Sentencing Law and Practice,* § 5C1.2 cmt. 3(c) (2002) (criticizing *Hallum*).

Accordingly, we hold a joint criminal actor's firearm possession is not attributable to a defendant for purposes of applying the mandatory minimum safety valve provision of U.S.S.G. § 5C1.2(2), unless the defendant induced such possession in accordance with § 5C1.2(2) comment. (n.4).[2]

In this case, the district court relied exclusively on *Hallum* in determining Ms. Pena–Sarabia's husband's possession of a firearm foreclosed her access to the § 5C1.2 safety valve. The district court also found Ms. Pena–Sarabia would have been eligible for the safety valve "if the circuit were to change its position with regard to the *Hallum* case." The government has not contested these findings on appeal. Accordingly, possession of a firearm by Ms. Pena–Sarabia's husband is not attributable to Ms. Pena–Sarabia for purposes of U.S.S.G. § 5C1.2(2). Therefore, we must remand for resentencing.

We **AFFIRM** the district court's denial of Ms. Pena–Sarabia's motion to suppress, and we **REMAND** this case with instructions to vacate Ms. Pena–Sarabia's sentence and to resentence her in accordance with this opinion.

---

**2.** We recognize we are "bound by the precedent of prior panels absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court." *In re Smith,* 10 F.3d 723, 724 (10th Cir.1993) (per curiam), *cert. denied,* 513 U.S. 807, 115 S.Ct. 53, 130 L.Ed.2d 13 (1994). In accord with our practice, we have circulated this opinion to the en banc court. The court has voted unanimously to overrule *United States v. Hallum,* 103 F.3d 87 (10th Cir.1996), to the extent it is inconsistent with the rule announced here.