**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 18, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOANNA ZARATE-SUAREZ,

    Defendant - Appellant.

No. 19-1203
(D.C. No. 1:18-CR-00266-PAB-1)
(D. Colo.)

_____

**PUBLISHED DISSENT**
_____

**PHILLIPS**, Circuit Judge.
_____

I concur with the majority's affirming the district court's application of the

aggravating-role adjustment, United States Sentencing Guidelines Manual (U.S.S.G.)

§ 3B1.1(a). But I dissent with its affirming the district court's application of the use-of-

violence specific offense characteristic, located at § 2D1.1(b)(2).

## BACKGROUND

Zarate-Suarez headed a multi-pound-methamphetamine conspiracy in Denver,

Colorado. She pleaded guilty to three drug counts, the first for conspiracy, the second and

third for possession with intent to distribute. The district court sentenced her to 20 years

of imprisonment.

This appeal involves a small subset of the case's facts: One of Zarate-Suarez's out-of-state customers sent his girlfriend to Colorado with $16,000 to buy three pounds of methamphetamine from Zarate-Suarez. Sometime before the sale, Zarate-Suarez devised a more profitable plan. She enlisted three male underlings to invite the girlfriend on a late-night cigarette run. The underlings would then abandon her at the gas station when she got out of the car. This would enable Zarate-Suarez and others the needed time to enter the girlfriend's hotel room and steal the $16,000. All went according to plan until on arriving at the gas station the girlfriend merely pulled her seat forward to let one of the men out and refused to get out herself. That led to one of the men assaulting her and removing her from the car. The three men returned to Zarate-Suarez, and she divided the $16,000, keeping most of it for herself.[1]

After Zarate-Suarez pleaded guilty to all charges, a probation officer prepared a presentence report (PSR). The PSR recommended a two-offense-level enhancement under the specific offense characteristic located at U.S.S.G. § 2D1.1(b)(2), which applies when "the defendant" has "used violence, made a credible threat to use violence, or directed the use of violence." The PSR's one-paragraph justification for the enhancement reads as follows:

> **47. Specific Offense Characteristics:** Pursuant to §2D1.1(b)(2), if the defendant used violence, made a credible threat of violence, or directed the use of violence, increase by two levels. The undersigned considered the offense in which the female courier was kidnapped and [Zarate-Suarez], along with Fitzgerald, "devised" the plan. [Zarate-Suarez] also split the

---

[1] As for Zarate-Suarez's reaction after hearing about the men having physically assaulted the girlfriend, the district court acknowledged that none of the attorneys had ever asked about that.

2

money with those who kidnapped the female courier. Due to [Zarate-Suarez's] involvement in this kidnapping, a two-level increase was applied.

R. vol. 2 at 16. In her Objection to Presentence Investigation Report, Zarate-Suarez opposed the enhancement on two grounds. First, she argued that the government had offered insufficient evidence to meet the specific terms of § 2D1.1(b)(2):

> There is insufficient evidence, even under a preponderance of the evidence standard, that Ms. Zarate-Suarez used violence, made a credible threat to use violence, or directed the use of violence. Ms. Zarate-Suarez was not present when [the girlfriend] was beaten. There is insufficient evidence that Ms. Zarate-Suarez directed anyone to commit violence. No witness with personal knowledge has ever alleged that Ms. Zarate-Suarez was involved in a plan to *kidnap* or *assault* [the girlfriend].

R. vol. 1 at 38.

Second, immediately after this, Zarate-Suarez opposed the PSR's basis for imposing the enhancement—her involvement in the "kidnapping,"[2] in which her underlings (not she) had used violence. By deeming Zarate-Suarez responsible for the violent acts of others, the PSR departed from the plain text of § 2D1.1(b)(2), which limits a defendant's responsibility to her own acts. In doing so, the PSR necessarily (though silently) jumped to a different guideline, which, when applicable, allows a sentencing court to hold a defendant responsible for the conduct of others. *See* U.S.S.G. § 1B1.3(a)(1)(B).

---

[2] At the sentencing hearing, Zarate-Suarez's counsel stated, "I also do want to point out that while the words 'kidnap' and 'robbery' keep getting thrown out, I don't think they are intended as the legal definition, and I would point out there was no robbery. Nothing was taken from the person or presence of [the girlfriend] and it was not a kidnap. She chose to leave. Although she was left at the gas station, she chose to get into the vehicle and go there to get cigarettes." R. vol. 3 at 42:16–22.

On this point, Zarate-Suarez disputed as a factual matter one of § 1B1.3(a)(1)(B)'s prerequisites—that the acts of the others had been reasonably foreseeable to her:

> Under the relevant conduct standard of § 1B1.3(a)(1)(B), the assault of [the girlfriend] would have to be "reasonably foreseeable" to Ms. Zarate-Suarez in order for the enhancement at § 2D1.1(b)(2) to be applicable. The assault was not reasonably foreseeable to Ms. Zarate-Suarez.

R. vol. 1 at 38–39. In this regard, Zarate-Suarez spent a page disputing that the others' violence was reasonably foreseeable to her. She explained that she and her underlings had planned to abandon the girlfriend at the gas station when the girlfriend got out to buy cigarettes; that the plan had faltered when the girlfriend stayed in the car, leaning her car seat forward to let one of the men out and refusing to get out; and that in this unexpected situation the underlings spontaneously assaulted the girlfriend and removed her from the car. *Id.* at 39–40.

At the sentencing hearing, Zarate-Suarez repeated her arguments. First, Zarate-Suarez's counsel argued that the government had presented insufficient evidence of her personal involvement in the assault, as required by § 2D1.1(b)(2). On this point, counsel noted that Zarate-Suarez had not been present at the assault, and further declared that "[t]here is absolutely no evidence that she directed anyone or told anyone or suggested to anyone that violence should occur." R. vol. 3 at 42:13–15. Second, counsel noted that "I do think that this is not something that was reasonably foreseeable to Ms. Zarate either," *id.* at 42:25–43:1, later adding that "the assault itself was the spontaneous conduct of

4

these men, and in no way did Ms. Zarate ever suggest that that should happen,"[3] *id.* at 46:3–5.

On appeal, Zarate-Suarez has continued to maintain her district-court arguments. Addressing the first argument, she states as follows:

> The [District] Court's focus on the foreseeability of whether violence might occur, however, is misplaced. Indeed, we have been unable to uncover any decision in which a court has applied a foreseeability requirement to determine whether a defendant used violence, made a credible threat to use violence, or directed the use of violence in the course of committing a drug-trafficking offense.

Br. of Appellant at 29. She describes the "key question" as being "whether the defendant used violence, intended to use violence or directed the use of violence." *Id.* at 31. In this regard, she cites cases in which courts have imposed two offense levels under § 2D1.1(b)(2) against defendants who themselves had used violence (as opposed to others having done so). Addressing the second argument, Zarate-Suarez continues to

---

[3] For the first time on appeal, the government contends that the record belies that "the assault 'was simply spontaneous and independent conduct,'" and that it instead supports that one of the underlings had told Zarate-Suarez that if the girlfriend "wouldn't cooperate, 'they would kick her out of the car.'" Appellee's Br. at 8, 14. As it turns out, this information comes from a DEA interview of one of the three men on the cigarette run. The PSR did not include this information, the government did not mention it at the sentencing hearing, and the district court did not rely on it. And for good reason. The report notes how this man repeatedly changed his story on key points. Suppl. R. vol. 2 at 15 (describing the special agents' belief that the man "omitted information" and "openly provided false information" to the agents). Even if the district court had known about and found the man's statement credible, the statement would not justify a § 2D1.1(b)(2) enhancement. The man described a plan to trick the girlfriend into exiting the car to let one of the men in the back seat get out at the service station, but she leaned her seat forward instead. This plan shows an intent to *avoid* committing an assault. Certainly, this account does not show Zarate-Suarez directing that violence be used.

maintain that her underlings' assault on her customer's girlfriend was not reasonably foreseeable to her. She emphasizes that the plan had been to abandon the girlfriend at the gas station and that, when the girlfriend refused to get out of the car, the men spontaneously assaulted her and removed her from the car. Zarate-Suarez argues that she had no way of knowing that the girlfriend would be "dressed only in a blanket and flip flops and would refuse to get out because it was cold outside."[4] *Id.* at 32–33. Because Zarate-Suarez has preserved her objection to the district court's imposing two offense levels under § 2D1.1(b)(2), I would review de novo that question. *See, e.g.*, *United States v. Evans*, 782 F.3d 1115, 1117 (10th Cir. 2015) ("[W]e review the district court's legal conclusions under the Guidelines de novo and its findings of fact for clear error, giving great deference to the district court's application of the Guidelines to the facts." (citation and internal quotation marks omitted)).

## ANALYSIS

### I.      U.S.S.G. § 2D1.1(b)(2)

Section 2D1.1(b)(2) reads as follows: "If the defendant used violence, made a credible threat to use violence, or directed the use of violence, increase by **2** levels." The

---

[4] The two arguments are independent and distinct. Any attempt to combine the first as part of the second would make no sense. After all, how would Zarate-Suarez's showing that she did not use violence, credibly threaten the use of violence, or direct the use of violence in turn show that the violent acts of other persons with whom she had jointly undertaken criminal activity would not be reasonably foreseeable to her? Plus, Zarate-Suarez referred to § 2D1.1(b)(2) in discussing her lack of personal participation, not to § 1B1.3(a)(1)(B).

district court did not find that Zarate-Suarez did any of these three things. So by the subsection's plain language, Zarate-Suarez is entitled to prevail.

## II.     U.S.S.G. § 1B1.3(a)(1)(B)

The district court erred by departing from the plain text of § 2D1.1(b)(2) and instead following the PSR's view that Zarate-Suarez was responsible for the two-offense-level enhancement because she had been "involved in the kidnapping" in which others had used violence. *See* § 1B1.3(a)(1)(B). But by requiring that Zarate-Suarez be the one using violence, credibly threatening violence, or directing violence, § 2D1.1(b)(2) unequivocally forecloses the district court from enhancing Zarate-Suarez's Guidelines calculation for others' conduct.

Here, it helps to step back and examine the workings of § 1B1.3(a)(1)(B). When applicable, that subsection applies in calculating base offense levels, specific offense characteristics, and adjustments "on the basis of the following:"

> in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

§ 1B1.3(a)(1)(B). But § 1B1.3(a)(1)(B) is inapplicable to § 2D1.1(b)(2).

All-important are the three words that begin § 1B1.3: "Unless otherwise specified." When a Guideline enhancement requires a showing that *the defendant* has done a specific act, the Guidelines have "otherwise specified" that § 1B1.3(a)(1)(B) does

7

not apply.[5] This only makes sense—§ 2D1.1(b)(2) requires that the defendant has used violence, credibly threatened violence, or directed violence, not that *someone else* has done so.[6] The Guidelines' text itself spells The End.

To activate § 1B1.3(a)(1)(B), the Sentencing Commission does not speak in terms of "the defendant did X, Y, or Z." After all, doing so would make no sense. Enhancements requiring that the defendant personally committed some act (like § 2D1.1(b)(2)'s "the defendant used violence") do not mix with § 1B1.3(a)(1)(B)'s application to conduct of other persons. Simply put, § 2D1.1(b)(2) considers only the defendant's conduct, and § 1B1.3(a)(1)(B) considers only conduct of persons other than the defendant. The two subsections are oil and water. By objecting that the government

---

[5] Though this is self-evident from the quoted Guidelines sections' text, the Sentencing Commission takes no chances with any misunderstandings. In its training materials for judges, probation officers, prosecutors, and defense counsel, the Commission states it this way: "One of the most common specifications otherwise [speaking to § 1B1.3's prefatory 'Unless otherwise specified'] is the use of the term '*defendant*' (as opposed to '*offense*') to limit relevant conduct in some considerations to the acts for which the defendant is directly responsible (as opposed to acts a co-participant may have done)." *Advanced Relevant Conduct*, U.S. Sentencing Comm'n 31 (2017), https://www.ussc.gov/education/training-resources/relevant-conduct-slideshows.

[6] *See also United States v. Pojilenko*, 416 F.3d 243, 248 (3d Cir. 2005) ("In our view, § 3B1.4 'specifie[s]' [referring to § 1B1.3(a)] that 'use of a minor' enhancements be individualized, and thus not based on the acts of co-conspirators," relying on the "if '*the defendant* used or attempted to use a person less than eighteen years of age'" language (first alteration in the original) (first quoting § 1B1.3(a); and then quoting § 3B1.4)); *United States v. Acosta*, 474 F.3d 999, 1002–03 (7th Cir. 2007) (adopting *Pojilenko*'s reasoning and rejecting three other circuits' application of § 1B1.3(a)(2) to § 3B1.4); *cf. United States v. Tagore*, 158 F.3d 1124, 1128–29 (10th Cir. 1998) (recognizing that a cross reference's applying if "the offense involved" implicates broader relevant conduct than does a specific offense characteristic applying if "'the defendant' engaged in a pattern of activity involving the sexual abuse or exploitation of a minor" (citation omitted)).

8

had offered insufficient evidence that *she herself* had used violence, credibly threatened violence, or directed the use of violence, Zarate-Suarez necessarily objected to the district court's enhancing her sentence based on the conduct of others under § 1B1.3(a)(1)(B). And she was well within her rights in arguing that the evidence did not show the violence of her underlings was reasonably foreseeable to her. She was free to do so in case the district court followed the PSR's mistaken course.

The Sentencing Commission uses different wording when allowing defendants to be held responsible for the conduct of others under § 1B1.3(a)(1)(B). A flip through the Guidelines Manual shows that it routinely does so. For instance, to increase the base offense level under § 2A1.4(a)(2)(A) for involuntary manslaughter, the Sentencing Commission requires that "the offense involved reckless conduct[.]" A reference to "the offense involved" is a dead giveaway. After all, the Guidelines provide that "'***Offense***' means the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." § 1B1.1 cmt. n.1(I). So if § 2D1.1(b)(2) instead read, "If the offense involved the use of violence, a credible threat of violence, or a direction to use violence, increase by 2 levels," Zarate-Suarez might well be responsible for the two levels.[7] But the Sentencing Commission chose differently. That is, it chose to "specify otherwise" under § 1B1.3.

---

[7] *See* Thomas W. Hutchinson et al., *Federal Sentencing Law and Practice* 73 (2019 ed.) ("The Commission has defined the term 'offense' to mean 'the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context.' The Commission, therefore, cannot be otherwise specifying whenever it uses the term 'offense' in a chapter two or three guideline provision.").

Another way the Sentencing Commission words Guidelines enhancements to include other persons' conduct under § 1B1.3(a)(1)(B) is illustrated by § 2D1.1(b)(7): "If the defendant, or a person for whose conduct the defendant is accountable under § 1B1.3 (Relevant Conduct), distributed a controlled substance through mass-marketing by means of an interactive computer service, increase by **2** levels." Again, if § 2D1.1(b)(2) read, "If the defendant, or a person for whose conduct the defendant is accountable under § 1B1.3 (Relevant Conduct), used violence, made a credible threat of violence, or directed the use of violence," Zarate-Suarez might well receive the two-level enhancement. But the Sentencing Commission chose against using this formulation, again specifying otherwise.

Our circuit has decided two cases involving the very dynamic between "the defendant" and "unless otherwise specified" as raised in this case—albeit in individual commentary to two guideline sections. First, in *United States v. Pena-Sarabia*, 297 F.3d 983, 987–89 (10th Cir. 2002), we reviewed a defendant's eligibility for a safety-valve reduction under U.S.S.G. § 5C1.2. At issue was the second of five eligibility conditions, namely, that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense[.]" § 5C1.2(a)(2). Though Ms. Pena-Sarabia had not possessed a firearm, her codefendant husband had done so. 297 F.3d at 987. Despite this, the government contended that she "should nevertheless be held accountable for the foreseeable acts of her husband undertaken in their joint criminal activity." *Id.*

The court reviewed the district court's interpretation of § 5C1.2 as a question of law. *Id.* Among other things, the court considered the following language from § 5C1.2's

10

commentary section: "Consistent with § 1B1.3 (Relevant Conduct), the term '*defendant*,' as used in subdivision (2) [of § 5C1.2], limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused."[8] *Id.* at 987–88 (alteration in original) (quoting § 5C1.2 cmt. n.4) (internal quotation marks omitted). The court applied § 1B1.3's prefatory "Unless otherwise specified" as defeating the application of § 1B1.3(a)(1)(B). *Id.* at 988. In reaching this plain-text result, the court overruled *United States v. Hallum*, 103 F.3d 87 (10th Cir. 1996), which had disallowed safety-valve relief because of "another person's reasonably foreseeable possession of a firearm in furtherance of a joint criminal activity." *Id.* at 987–98 (citing *Hallum*, 103 F.3d at 90).[9]

Second, in *United States v. Conley*, 131 F.3d 1387 (10th Cir. 1997), we reviewed a district court's imposition of two offense levels under U.S.S.C. § 3C1.2, Reckless Endangerment During Flight. After a bank robbery, three robbers led police on a high-speed chase. *Id.* at 1388–89. The § 3C1.2 adjustment applies "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer[.]" *Id.* at 1389. As in *Pena-Sarabia*, the court quoted the Guideline's commentary section, which for § 3C1.2 provided that the "defendant [is] responsible for the reckless conduct of others only if he 'aided or

---

[8] This tracks the language of § 1B1.3(a)(1)(A).

[9] Because a panel is bound by the precedent of earlier panels, the court circulated the opinion to the en banc court. The en banc court voted unanimously to overrule *Hallum*. *Pena-Sarabia*, 297 F.3d at 989 n.2. The court noted that every other circuit to pass on the issue had rejected *Hallum*. *Id.* at 987–89.

abetted, counseled, commanded, induced, procured, or willfully caused' that conduct."

*Id.* at 1390 (quoting § 3C1.2 cmt. n.5). Though Conley had not driven the getaway car, we affirmed the district court's imposition of the two offense levels. *Id.* at 1391. We relied on PSR information indicating that Conley had encouraged the driver's reckless behavior. *Id.* We also relied on the inherent dangers of a high-speed escape from a bank robbery. *Id.* In this regard, we looked to Conley's aiding or abetting, counseling, commanding, inducing, procuring, or willfully causing the driver's reckless behavior. *Id.* In other words, we looked at what Conley himself had done leading up to the high-speed chase, because "[m]ere reasonable foreseeability of the reckless behavior at issue is not enough by itself to support a § 3C1.2 enhancement." *Id.* at 1390.

Unlike the Guidelines sections at issue in *Pena-Sarabia* and *Conley*, § 2D1.1(b)(2) contains no similar commentary note.[10] But this does not mean that the Sentencing Commission has authorized the district court to use § 1B1.3(a)(1)(B) in determining whether Zarate-Suarez herself "used violence, made a credible threat of violence, or directed the use of violence" under § 2D1.1(b)(2).[11] Again, the plain text of the two Guidelines sections establishes this. And a leading commentator our court has previously

_____

[10] *See also* U.S.S.G. §§ 2K2.1 cmt. n.13(c), 2K3.1 cmt. n.1(A), 3B1.5 cmt. n.2.

[11] In its training materials for judges, probation officers, prosecutors, and defense counsel, the Commission states it this way: "The use of the term 'defendant' prohibits including relevant conduct based on the acts of others under § 1B1.3(a)(1)(B). NOTE: Defendant *is still accountable* for acts he/she committed, aided, abetted, counseled, commanded, induced, procured, and willfully caused at § 1B1.3(a)(1)(A)." *Advanced Relevant Conduct*, U.S. Sentencing Comm'n 33 (2017), https://www.ussc.gov/education/training-resources/relevant-conduct-slideshows.

12

relied on sees it the same way. *See* Thomas W. Hutchinson et al., *Federal Sentencing Law and Practice* 73 (2019 ed.) ("**Use of the term 'the defendant.'** The Commission does 'otherwise specify' whenever it uses the term 'defendant' in a chapter two or three guideline provision. Requiring that a determination be made on the basis of defendant's conduct is inconsistent with the relevant conduct rules of § 1B1.3(a) that make a defendant accountable for the conduct of others. The use of 'defendant,' therefore, otherwise specifies and precludes holding a defendant accountable for the conduct of others.").[12]

## III.  Plain-Error Standard

### A.  Why the Plain-Error Standard Does Not Apply.

The majority concludes that the plain-error standard governs Zarate-Suarez's § 2D1.2(b)(2) claim. It rules that she forfeited her argument that the district court erred by relying on the violent conduct of her underlings under § 1B1.3(b)(2). Essentially, it requires that to preserve the argument, Zarate-Suarez needed to tell the district court that it would commit legal error by applying that subsection. But as mentioned, Zarate-Suarez did just that by arguing that the district court could not impose the two levels under § 2D1.1(b)(2) without finding that *she herself* had used violence, credibly threatened the use of violence, or directed the use of violence. This suffices to have alerted the district court that Zarate-Suarez objected to her sentence being enhanced based on others'

---

[12] Our court relied on this treatise in *Pena-Sarabia*, 297 F.3d at 989, as authority disagreeing with *Hallum*, as discussed earlier in footnote 9.

conduct. Otherwise stated, her § 2D1.1(b)(2) objection necessarily also preserved an objection to the district court's application of § 1B1.3(a)(1)(B).

**B.    Why Zarate-Suarez Would Prevail on Plain-Error Standard if it Did Apply.**

Even under plain-error review, Zarate-Suarez should prevail. First, as explained above, the district court erred by not denying the § 2D1.1(b)(2) enhancement according to the plain text of that subsection and § 1B1.3. By requiring that Zarate-Suarez herself have used, credibly threatened, or directed violence, § 2D1.1(b)(2) "otherwise specified" that § 1B1.3(a)(1)(B) does not apply. As stated above, in concluding that the district court erred in enhancing Zarate-Suarez's sentence under § 2D1.1(b)(2), I rely on the instruction from the Sentencing Commission, the reasoning from *Pena-Sarabia* and *Conley*, and the supporting statements in Hutchinson et al., *Federal Sentencing Law and Policy*.[13]

Second, the error is plain.  Our court has often ruled that error can be plain based on the text of statutes or Guidelines. *See, e.g.*, *United States v. Faulkner*, 950 F.3d 670, 678 (10th Cir. 2019) (noting in a dispute about a Guidelines application that, in addition to showing that the Supreme Court or Tenth Circuit has addressed an issue, a defendant can show an error is plain "if the district court's interpretation was clearly erroneous" (citation and internal quotation marks omitted)); *United States v. Fagatele*, 944 F.3d 1230, 1239 (10th Cir. 2019) (ruling that to show that error is plain, a defendant must

---

[13] The majority declines to rule on whether the district court erred in applying two offense levels under § 2D1.1(b)(2), instead opting to rule that the error was not plain. Majority Op. at 10 (noting that "even if we continued the plain-error analysis, we would affirm. That's because even if we assume the district court erred in applying the reasonably foreseeable standard, that error was not plain.").

14

"demonstrate either that this court or the Supreme Court has resolved these matters in his favor, or that the language of the relevant statutes is 'clearly and obviously' limited to the interpretation [he] advances" (citations omitted)); *United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003) (ruling based on the text of U.S.S.G. § 3E1.1 that the district court plainly erred by providing a one-level reduction for acceptance of responsibility when that Guideline allowed a binary choice between two or no levels); *United States v. Alessandroni*, 982 F.2d 419, 420 (10th Cir. 1992) (reviewing for plain error a defendant's claim that the district court had erroneously applied the Guidelines' criminal-history provisions and noting that "the imposition of a sentence based on an erroneous interpretation of the law constitutes plain error" (citation omitted)).

The text of § 2D1.1(b)(2) and § 1B1.3 demonstrates that the district court's error is plain. Their text alone shows two reasons that the district court's error is plain. First, as explained above, "the defendant" as used in § 2D1.1(b)(2) and "[u]nless otherwise specified" as used in § 1B1.3 bar the district court's use of § 1B1.3(a)(1)(B) to hold Zarate-Suarez responsible for the violent acts of others. Second, the Guidelines elsewhere reinforce this. As earlier mentioned, some Guidelines commentary notes—including the one involved in *Pena-Sarabia*—provide that "Consistent with § 1B1.3 (Relevant Conduct)," the term "defendant," as used in the particular Guidelines section "limits the accountability of the defendant to the defendant's own conduct and conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. §§ 2K2.1 cmt. n.13(B), 2K3.1 cmt. n.1(A), 3B1.5 cmt. n.2, 5C1.2 cmt. n.4; *see also* U.S.S.G. § 3C1.2 cmt. n.5 ("Under this section, the defendant is accountable

15

for the defendant's own conduct and for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused."). Again, the introductory words show the district court's error to be plain: "Consistent with § 1B1.3 (Relevant Conduct)." This limits the meaning of "defendant" for § 1B1.3 (Relevant Conduct) purposes to the defendant's "own conduct and conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." Thus, for any uses of "defendant" in the Guidelines Manual, this "Consistent with § 1B1.3" limitation includes within "defendant" conduct listed at § 1B1.3(a)(1)(A), but it *excludes* conduct listed at § 1B1.3(a)(1)(B).

In addition, Zarate-Suarez has met the third prong of the plain-error analysis by showing that the error affected her substantial rights—she has shown a reasonable probability that absent the error the outcome of the proceeding would have been different. *United States v. Dominguez Benitez*, 542 U.S. 74, 81–82 (2004). In *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016), the Court reviewed for plain error a district court's miscalculation of the defendant's advisory Guidelines range. The Court noted that "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Id.* at 1345. Though the district court varied downward by a third of Zarate-Suarez's advisory sentence (from 30 to 20 years), I see nothing in the sentencing transcript revealing what sentence the district court would have imposed absent the two

16

offense levels added under § 2D1.1(b)(2).[14] *See United States v. Sabillon-Umana*, 772

F.3d 1328, 1333 (10th Cir. 2014) ("When the court's starting point is skewed a

'reasonable probability' exists that its final sentence is skewed too." (citation omitted)).

Finally, on a showing of the first three prongs of the plain-error analysis, this court

has "discretion to correct the forfeited error if the error "seriously affects the fairness,

integrity or public reputation of judicial proceedings." *Molina-Martinez*, 136 S. Ct. at

1343 (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)) (internal quotation

marks omitted). In *Sabillon-Umana*, 772 F.3d at 1334, this court noted that

> whether a court clearly miscalculates the advisory guidelines range or clearly mistakes its entitlement to depart from that range under § 5K1.1, a defendant's substantial rights and the integrity of the judicial process are surely at risk: in either event the benchmark for the entire sentencing process rests on an obviously mistaken premise.

And the court concluded by stating that "we can think of few things that affect an

individual's substantial rights or the public's perception of the fairness and integrity of

the judicial process more than a reasonable probability an individual will linger longer in

prison than the law demands only because of an obvious judicial mistake." *Id.* at 1335.

For these reasons, I would vacate the district court's sentence and remand for

resentencing without the two offense levels imposed from § 2D1.1(b)(2).[15]

---

[14] The district court stated that it was holding against Zarate-Suarez the beating up of the girlfriend, and then it imposed the 240-month sentence. I am uncertain whether the sentence would remain 240 months if the district court no longer held the violence against her as it did by applying two offense levels under § 2D1.1(b)(2).

[15] I acknowledge that publishing a dissent is unusual when the majority does not publish its opinion. I publish this one because of the importance of relevant conduct in federal sentencings and the need for rulings explaining how it works. Unwarranted Guidelines enhancements lead to unwarranted prison time.